FILED

2023 Sep-12  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JORI C. JONES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.:  2:22-cv-00298-MHH** |
| **THE TOWN OF BROOKSIDE** | } | |
| **ALABAMA,** *et al.*, | } | |
| | } | |
| **Defendants.** | } | |
| | } | |

## MEMORANDUM OPINION AND ORDER

Jori C. Jones has sued the Town of Brookside, Alabama; Brookside's Chief of Police, Michael Jones; and Officer Bradley Singleton of the Brookside Police Department.  Ms. Jones asserts that she is a victim of the defendants' alleged practice of unlawfully initiating traffic stops and conducting illegal searches to issue citations to increase the town's revenue.  Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Brookside has asked the Court to dismiss the claims against it.  Brookside argues that its officers had probable cause to initiate a traffic stop on Ms. Jones.  For the reasons discussed in this order, the Court denies Brookside's motion to dismiss.

## STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure

to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss, a district court must accept well-pleaded facts as true, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000), and must view the allegations in a complaint in the light most favorable to the non-moving party, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Therefore, to resolve Brookside's motion to dismiss, the Court views the allegations in the complaint in the light most favorable to Ms. Jones.

## FACTUAL ALLEGATIONS

In her complaint, Ms. Jones alleges that on October 22, 2020, at approximately 6:00 P.M. near the Town of Brookside, Chief Jones stopped her for a headlight

violation. (Doc. 19, p. 2, ¶ 6). Ms. Jones disputed the traffic stop because it was not dark out yet. (Doc. 19, p. 3, ¶¶ 7–8). Ms. Jones alleges that "the stop occurred around 6:00 p.m." when the sun was still out and that "[s]tate law requires vehicle lights from a half-hour after sunset which was at 6:30.17 p.m. on that date." (Doc. 19, p. 3, ¶ 8). Chief Jones ordered Ms. Jones to exit her car. She "initially refused" because Chief Jones "was not wearing a mask and the Covid pandemic was raging at that time in 2020." (Doc. 19, p. 3, ¶ 7). Officer Singleton arrived at the scene with a police dog and again ordered Ms. Jones to exit her car; Officer Singleton was not wearing a mask. (Doc. 19, p. 3, ¶ 9). Ms. Jones presented her driver's license and proof of insurance to the officers and eventually exited her car "after one officer placed his hand on his holster," which made Ms. Jones fear that the officers would tase her. (Doc. 19, p. 3, ¶¶ 10–11).

The officers handcuffed Ms. Jones and conducted a dog search of her person. (Doc. 19, p. 3, ¶¶ 11–12). While handcuffed, the officers placed Ms. Jones in the back of a police car and told her that because she had not cooperated, she was going to jail, and her car would be towed. (Doc. 19, pp. 3, ¶ 11; p. 4, ¶ 13). The officers and the police dog searched Ms. Jones's car over her objection and found a pistol for which Ms. Jones produced a valid pistol permit. (Doc. 19, pp. 3–4, ¶ 12; p.4, ¶ 14).

Ms. Jones was eventually uncuffed and told she was free to leave. (Doc. 19,

p. 4, ¶ 16).  Ms. Jones received three citations for failure to have headlights on at night, failure or refusal to display insurance, and an expired tag.  (Doc. 19, p. 4, ¶ 16).  The Brookside municipal court convicted Ms. Jones and fined her $605 for the citations.  (Doc. 19, p. 9, ¶ 28).  She appealed the convictions to the Circuit Court of Jefferson County, and the Circuit Court dismissed the charges.  (Doc. 19, p. 9, ¶ 33).

Ms. Jones alleges that she is not the only person who Brookside police officers have unjustifiably pulled over and searched.  According to Ms. Jones, the Brookside police department, under Chief Jones's supervision, regularly conducts traffic stops and searches without probable cause to amass charges against motorists and increase Brookside's revenue from citations and fines.  (Doc. 19, pp. 6–7, ¶¶ 26–27).

## DISCUSSION

### *Section 1983 Claims*

The Town of Brookside is subject to suit under 42 U.S.C. § 1983 for constitutional violations it causes pursuant to a policy or custom of the town.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Ms. Jones alleges that Brookside violated her rights under the Fourth and Fourteenth Amendments of the United States Constitution.  (Doc. 19, pp. 15, 20).

Brookside raises two arguments in support of its motion to dismiss Ms. Jones's § 1983 claims.  First, Brookside argues that its police officers had probable

cause to stop Ms. Jones, and therefore no constitutional violation occurred that could give rise to a § 1983 claim. (Doc. 22, pp. 5–8). Second, Brookside argues that even if there was not probable cause to initiate a traffic stop, Ms. Jones has failed to identify a custom or policy that was the "moving force" behind the constitutional violations she alleges. (Doc. 22, pp. 4–5). The arguments are not persuasive.

Chief Jones's decision to stop Ms. Jones was reasonable if he had "probable cause to believe that a traffic violation ha[d] occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Ms. Jones alleges that Chief Jones stopped her for failure to have her car's headlights on. (Doc. 19, p. 2, ¶ 6).[1] Under Alabama law, drivers must "display lighted lamps and illuminating devices . . . [f]rom a half hour after sunset to a half hour before sunrise." ALA. CODE § 32-5-240(a)(1)(a). Ms. Jones alleges that the stop occurred near 6:00 P.M. when it was not yet dark outside. (Doc. 19,

---

[1] Brookside argues that Chief Jones stopped Ms. Jones for failure to have her headlights on and for an expired license tag. (Doc. 22, p. 7). Ms. Jones argues that, "[t]hough given a ticket for an expired tag, that was not the reason for the stop, as checking that postage-stamp sized sticker would have to have come later." (Doc. 24, p. 10). Brookside did not file a reply brief addressing Ms. Jones's argument. Chief Jones admits in his answer to the amended complaint "that he was involved in the subject traffic stop of plaintiff, which was made because the headlights of her vehicle were not on . . . ." (Doc. 25, p. 2, ¶ 6). Accepting Ms. Jones's allegations as true and viewing the allegations in the light most favorable to her, the Court credits Ms. Jones's allegation that Chief Jones stopped her for a headlight violation.

p. 3, ¶¶ 7–8).[2]  On October 22, 2022, the sun set at 6:06:18 P.M., so under Alabama law, Ms. Jones needed to turn her headlights on while driving starting at 6:36:18 P.M.[3]  Accepting Ms. Jones's allegations as true and viewing the allegations in the complaint in the light most favorable to her, Ms. Jones has sufficiently alleged that Chief Jones did not have probable cause to conduct a traffic stop because Ms. Jones did not need to have her car's headlights on at the time of the traffic stop.

Even if there was not probable cause to stop Ms. Jones, Brookside is liable under § 1983 only if it caused the constitutional violations alleged; respondeat superior or vicarious liability is not a basis for Brookside to be liable for Chief Jones's and Officer Singleton's actions.  *Monell*, 436 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  To maintain her § 1983 claim against Brookside, Ms. Jones must identify a Brookside policy or custom that caused her injuries.  *See Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  Ms. Jones can establish a municipal policy or custom by identifying "either (1) an officially

---

[2] The traffic citations issued to Ms. Jones state that the offenses occurred at approximately 6:37 P.M.  (Doc. 1-1, p. 26; Docs. 9, 10).  Ms. Jones argues that the time in the citations is not the time Chief Jones pulled her over but rather the time after "the second officer and dog had arrived and after questioning, arguing about Covid masks, handcuffing and complete searching of Plaintiff's vehicle."  (Doc. 24, pp. 10–11).  Brookside did not file a reply brief contesting Ms. Jones's assertion.  Accepting Ms. Jones's allegations as true and viewing the allegations in the light most favorable to her, the Court credits Ms. Jones's allegation that the traffic stop occurred at 6:00 P.M.

[3] The Court may take judicial notice of scientific facts such as the time when the sun rises or sets. *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).  See *October 2020 - Birmingham, Alabama - Sunrise and sunset calendar*, SUNRISE SUNSET, https://sunrise-sunset.org/us/birmingham-al/2020/10 (last visited July 6, 2023), for information about the time the sun set on October 22, 2020.

promulgated [town] policy or (2) an unofficial custom or practice of the [town] shown through the repeated acts of a final policymaker for the [town]." *Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 694). Because towns like Brookside "rarely will have an officially-adopted policy of permitting a particular constitutional violation," Ms. Jones must show that Brookside "has a custom or practice" of permitting the constitutional violation at issue and that Brookside's custom or practice is the "moving force [behind] the constitutional violation." *Grech*, 335 F.3d at 1330 (alteration in original) (quoting *City of Canton*, 489 U.S. at 389).

In Counts Two and Six of her complaint, Ms. Jones alleges that Brookside violated her Fourth and Fourteenth Amendment rights by promoting a custom or policy that led to her unlawful stop, search, and temporary detention. (Doc. 19, pp. 15–16, ¶¶ 56–58; p. 20, ¶¶ 71–72). According to Ms. Jones, "Brookside has operated its police and court system with a primary objective of obtaining revenue from motorists travelling on or near Interstate-22[,] [and] [the town] has had a continued practice of stopping and searching scores of vehicles daily, doing so without probable cause or reasonable suspicion of wrongdoing." (Doc. 19, p. 6, ¶ 26). Ms. Jones alleges that despite Brookside's small size and the limited jurisdiction of its police force, in 2020, "Brookside issued over 3,000 citations, gave over 2,000 traffic warnings and made 1,273 misdemeanor arrests." (Doc. 19, pp. 5–6, ¶¶ 21–23, 26).

7

Ms. Jones alleges that Chief Jones was the policymaker responsible for the unlawful policies and practices of the Brookside Police Department. (Doc. 19, p. 7, ¶ 29). According to Ms. Jones, from the time Officer Jones became chief in 2018 until his termination, "Brookside embarked on a policy and practice of directing its police and court system primarily as a means of generating revenue. The numbers of police officers multiplied as did the arrests and impoundment of vehicles." (Doc. 19, p. 10, ¶ 38). Ms. Jones alleges that in 2017, the town's revenue from "fines, fees, forfeitures and jail fees" was $51,473 and that under Chief Jones, the revenue increased to $187,445 in 2019, $610,307 in 2020, and $710,025 in 2021. (Doc. 19, p. 11, ¶ 41). According to Ms. Jones, by 2020, "court and forfeiture fees made up almost half of Brookside's annual revenue." (Doc. 19, p. 11, ¶ 41). Further, "[f]or years, including that of Plaintiff's seizure, Brookside had no budget but operated on funds from its police and court. This increased revenue was used to employ more police officers and substantially increase the salary of the Town's prosecutor and judge." (Doc. 19, p. 8, ¶ 30; p. 9, ¶ 35). Ms. Jones alleges that in an interview, Chief Jones acknowledged Brookside's "600% increase" in revenue, stating that revenue could increase further with "more officers and more productivity." (Doc. 19, p. 12, ¶ 44).

At this stage, Ms. Jones has alleged sufficient facts to state a claim for relief that is plausible on its face. Ms. Jones has put forward sufficient allegations that

following Chief Jones's appointment in 2018, the Brookside police department began conducting unlawful traffic stops to issue more citations and increase the town's revenue and that this practice led to the violation of her rights as alleged in the complaint.[4]  Accordingly, the Court will not dismiss Counts Two and Six of Ms. Jones's complaint.

### *State Law Claims*

Brookside argues that, because there was probable cause to initiate a traffic stop, Ms. Jones's state law claims fail.  (Doc. 22, p. 9).  As discussed above, Ms. Jones has sufficiently alleged that Chief Jones did not have probable cause to initiate a traffic stop.  Accordingly, the Court will not dismiss Counts Four and Seven of Ms. Jones's complaint.

Initially, Ms. Jones asserted a state law malicious prosecution claim against Brookside, but she now states that a claim for "malicious prosecution cannot be maintained against a municipality in Alabama." (Doc. 24, p. 14).  Accordingly, the Court dismisses Count Ten against Brookside.

---

[4] *See Moffett v. Town of Brookside*, 2022 WL 16973255, at *5 (N.D. Ala. Nov. 16, 2022) ("Here, Plaintiffs claim that 'Brookside has operated its police and court system with a primary objective of obtaining revenue from motorists and has had a continued practice of stopping and searching scores of vehicles daily, doing so without probable cause or reasonable suspicion of wrongdoing.' They further contend that 'Police Chief Jones was directly responsible for implementing these policies and practices and actively participated in them.'  Plaintiffs assert that Officer Price acted pursuant to these policies and practices when he detained and searched Plaintiffs and impounded Michelle's car.  At this stage of the litigation, Plaintiffs have presented sufficient evidence that creates a genuine factual issue for trial.").

## CONCLUSION

For the reasons discussed in this order, the Court dismisses Ms. Jones's malicious prosecution claim against Brookside and denies Brookside's motion to dismiss the remaining claims against it.  The Court lifts the stay in this case.  Per the Court's Initial Order, no later than 21 days from the entry of this order, the parties should submit a joint Rule 26(f) report and proposed scheduling order.

**DONE** and **ORDERED** this September 12, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE